[Nos. D005359, D003940. Fourth Dist., Div. One. Nov. 9, 1988.]

SAN DIEGO GAS & ELECTRIC COMPANY, Plaintiff and Respondent, v.
3250 CORPORATION et al., Defendants and Appellants.

**COUNSEL**

Gaylord L. Henry and Ernesto J. Grijalva for Defendants and Appellants.

C. Larry Davis, Asaro & Keagy, Roscoe D. Keagy, Richard R. Freeland and Arnold Neves, Jr., for Plaintiff and Respondent.

OPINION

**TODD, J.**—San Diego Gas & Electric Company (SDG&E) brought this eminent domain proceeding to acquire an easement for an electric transmission line and service road on land owned at the time of judgment by 3250 Corporation and 275 Corporation (Owners). A jury awarded Owners $700,000 consisting of $384,000 for the easement as of the April 1, 1982, date of valuation, and $316,000 in severance damages. A judgment in condemnation was entered July 26, 1985.

Owners pursued various motions, including a motion for new trial, and on November 6, 1985, filed their notice of appeal from the judgment (D003940).

Beginning in August 1985, Owners sought litigation expenses and after trial court orders unfavorable to Owners on this issue filed a second notice of appeal on October 21, 1986 (D005359). SDG&E has moved to dismiss the latter appeal as untimely. We have consolidated these appeals and deferred decision on SDG&E's motion to dismiss until the appeals are considered on their merits.

In their appeal from the judgment in condemnation, Owners challenge the scope of the easement SDG&E acquired to the extent SDG&E is empowered to grant or deny permits for additional rights-of-way over or across the easement acquired, labeling this as an acquisition of a police power by condemnation. Owners also challenge the admission and exclusion of certain evidence of valuation and the refusal of the trial court to instruct the jury on a seller's duty to disclose to a purchaser known, hidden defects which are unknown to and not readily observed by the purchaser. Finding the contentions either waived or unmeritorious, we affirm the judgment in condemnation in D003940.

Finding Owners' purported appeal concerning the denial of litigation expenses is untimely, we dismiss the appeal in D005359.

FACTS

As part of SDG&E's Miguel to Mexico project which imports electricity from Mexico to SDG&E's customers, SDG&E commenced this eminent domain proceeding April 1, 1982, seeking to acquire a 120-foot-wide nonexclusive easement necessary for the construction, maintenance and operation of its 230,000-volt transmission line and a service road. The land affected by the proceeding is in the Otay Mesa area of San Diego County near the United States-Mexico border. When SDG&E filed the complaint it deposited $120,540 and obtained an order for immediate possession of the right-of-

way. (Code Civ. Proc.,[1] § 1255.010 et seq.) The deposit represented the probable amount of compensation to be awarded.

On April 21, 1982, Owners' predecessor in interest, V&V Development Company, answered the complaint asserting five affirmative defenses including the contentions that the public interest and necessity did not require the proposed project and the real property described in exhibits A through G of the complaint was not necessary. Exhibit E of the complaint describes the terms and scope of the easement sought, including the following provisions: "Grantor agrees that no other easement or right-of-way shall be granted or dedicated on, under or over this Easement without the prior written consent of the Grantee.

". . . . . . . . . . . . . . . . . . .

"Wherein, in this grant of Easement and right-of-way, Grantee's written consent is required, said consent shall not be unreasonably withheld."

As a result of the sale of the V&V Development Company land in a federal bankruptcy proceeding to Owners and the need of Owners for additional time to obtain appraisals and expert assistance for settlement purposes, on July 18, 1983, Owners stipulated to the abandonment of the five affirmative defenses in the answer filed April 21, 1982. After July 18, 1983, Owners never sought to amend the answer to assert an objection to the right to take.

For the purpose of obtaining an order authorizing withdrawal of the amount on deposit, on April 30, 1984, Owners stipulated the withdrawal "shall constitute a waiver of all defenses . . . to [SDG&E's] Complaint, except their claim for greater compensation . . . ."

The order was made April 30, 1984, and Owners withdrew the amount on deposit.

On March 1, 1985, the parties exchanged statutory settlement offers. SDG&E offered $550,000 plus accrued interest. Owners offered to settle for $945,00 plus accrued interest. The parties did not settle and on June 6, 1985, the jury returned its verdict for $700,000.

SDG&E deposited with the State Treasurer the $578,460 balance over the original deposit. Owners withdrew this deposit.

With respect to the litigation-expenses appeal in D005359, on August 29, 1985, Owners filed their motion for recovery of fees and costs under section 1250.410, subdivision (b). The motion was denied December 20, 1985.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

On January 6, 1986, Owners filed a motion for reconsideration of the order denying their motion for litigation expenses. On June 30, 1986, the court denied the motion for reconsideration, the court ruling Owners had not supported the motion with new or different facts as required by section 1008.

On July 10, 1986, SDG&E moved to set aside the June 30, 1986, order denying Owners' motion for reconsideration. On September 30, 1986, the court denied SDG&E's motion.

On October 21, 1986, Owners filed their notice of appeal from the December 20, 1985, June 30, 1986, and September 30, 1986, orders pertaining to the denial of litigation expenses to Owners.

DISCUSSION

I

■ Owners first contend the attempt by SDG&E to acquire a power to grant or deny permits for additional rights-of-way over or across the easement to be acquired is an attempt to acquire, by condemnation, a police power; and a privately owned utility does not have authority to acquire a police power. There are two substantive bases for concluding the Owners waived their right to object to SDG&E's right to take insofar as it grants a right also to consent to other use of the easement.

First, section 1255.260 provides: "If any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a *waiver by operation of law of all claims and defenses in favor of the persons receiving such payment* except a claim for greater compensation." (Italics added.)

Section 1268.140 provides, in part: "(a) After entry of judgment, any defendant who has an interest in the property for which a deposit has been made may apply for and obtain a court order that he be paid from the deposit the amount to which he is entitled upon his filing either of the following: (1) A satisfaction of the judgment.

"(2) A receipt for the money which shall constitute *a waiver by operation of law of all claims and defenses* except a claim for greater compensation." (Italics added.)

Under the plain language of these sections, Owners' withdrawal of the initial deposit and the balance after entry of judgment constitute a waiver by operation of law of all claims and defenses. At a very minimum, this "police power" assertion by Owners is a "claim" (other than a claim for greater

compensation) waived as a result of the withdrawals. (See *San Diego Gas & Electric Co.* v. *Moreland Investment Co.* (1986) 186 Cal.App.3d 1151, 1156 [231 Cal.Rptr. 274]—order authorizing withdrawal of deposit, there post-judgment, is in the nature of a "receipt" for purposes of section 1268.140, subd. (a)(2), thereby waiving all claims and defenses except claims for greater compensation.)

Second, Owners' written stipulations of July 18, 1983, and April 30, 1984, under any reasonable construction, constitute voluntary relinquishments of known rights to assert defenses to the scope of the taking such as Owners now assert with respect to SDG&E's right to consent to any other easement or right-of-way in connection with the easement in question. This conclusion is buttressed by the fact Owners did not seek to amend the answer to assert the defense here asserted. (See § 1250.345—"Subject to the power of the court to permit an amendment of the answer, if the defendant fails to object to the complaint, either by demurrer or answer, he is deemed to have waived the objection."; see also §§ 1250.350, 1250.360 and 1250.370—pleading objections to the right to take in answer or demurrer.) No other meaning can reasonably be attributed to those stipulations.

We point out in this regard that there is no merit to the argument Owners present in their reply brief that these stipulations are invalid because they are stipulations as to what the law is or in violation of public policy. The stipulations to waive all defenses neither stipulate what the law is nor violate public policy. The rule and cases Owners cite have no application to the stipulations waiving all defenses that are involved in this case.

Even if we were to hold there was no waiver in this case, we wish to add the general observation that there is lacking record support for the underlying premise that SDG&E has obtained a police power. For example, the terms of the judgment include a provision that SDG&E shall not unreasonably withhold any written consent required by the easement. If unreasonable withholding of consent were to occur sometime in the future, as Owners speculate it might, legal remedies are available.

## II

Owners contend the trial court erred in permitting evidence of the Chapter 11 bankruptcy sale of the subject property held by V&V Development Company to Owners. Before trial, the court conducted a hearing on the question of whether the 1982 bankruptcy sale to Owners was voluntary. The trial court described the bankruptcy sale in sufficient detail to resolve the issue when it ruled to allow the evidence, as follows: "THE COURT: All right. Having heard the evidence, and what I suspected at the beginning was that the sale would have the elements of being voluntary and not being

voluntary, and I think the evidence has disclosed that there are aspects of the sale which could meet either criteria.

"I think the preponderance of the evidence, as I have heard it, is that the sale was a voluntary sale, and I based that upon the appraisals of Johnson and Kibbey which were both made preceding the $13 million sale out of bankruptcy, and each of which has appraised the property at a value less than the $13 million; that there was no objection by V & V at the time of the sale, and they were in a position to have objected to the trustee; that the sale was made at a time early, very early in the trusteeship and at a time when [the trustee] said there was no urgency and when he could have easily waited; in other words, there was no need for him to have accepted that price, he could have waited for a better or later price if he had felt that it was not a fair price and market price for the property. So those things taken together lead me to conclude that the sale should be used and should be permitted as one of the sales in the evaluation."

Despite the trial court's ruling Owners assert the sale is inadmissible as an involuntary or forced sale for no other reason than because it was accomplished in a bankruptcy sale. The assertion goes to the weight of the evidence, not its admissibility, and is without merit.

Evidence Code section 816 provides in part: "When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the price and other terms and circumstances of any sale or contract to sell and purchase comparable property *if the sale or contract was freely made in good faith within a reasonable time* before or after the date of valuation. . . ." (Italics added.)

This provision furnishes direct authority for the use of the procedure followed in this case. (See *County of San Luis Obispo* v. *Bailey* (1971) 4 Cal.3d 518, 525 [93 Cal.Rptr. 859, 483 P.2d 27].) There was substantial evidence supporting the trial court's conclusion to the effect that features of haste or compulsion attending the sale did not cause it to fit into a category of not "freely made." Just as sales in probate proceedings may be viewed as admissible (see *Redevelopment Agency* v. *Zwerman* (1966) 240 Cal.App.2d 70, 74-75 [49 Cal.Rptr. 443]), so also may a court determine a sale in a bankruptcy proceeding may be considered as a comparable sale shedding light on the value of the property. No binding authority holds otherwise.

We conclude there was no abuse of discretion in the trial court's ruling on the evidence of the bankruptcy sale. (See *People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal.App.2d 716, 738-739 [50 Cal.Rptr. 95]; *Monterey County Flood Control & Water Conservation Dist.* v. *Hughes* (1962) 201 Cal.App.2d 197, 215-216 [20 Cal.Rptr. 252].)

## III

■ Owners contend the bankruptcy sale evidence should not have been admitted because Evidence Code section 815 provides that a sale of all or part of the property condemned after a lis pendens has been filed may not be taken into account in the valuation of the property. Owners' reliance on Evidence Code section 815 is misplaced. That section provides: "When relevant to the determination of the value of property, a witness may take into account as a basis for an opinion the price and other terms and circumstances of any sale or contract to sell and purchase which included the property or property interest being valued or any part thereof if the sale or contract was freely made in good faith within a reasonable time before or after the date of valuation, except that *in an eminent domain proceeding where the sale or contract to sell and purchase includes only the property or property interest being taken or a part thereof, such sale or contract to sell and purchase may not be taken into account if it occurs after the filing of the lis pendens.*" (Italics added.)

The proscription against consideration of sales after the filing of the lis pendens in eminent domain proceedings, by its terms, applies to a sale which "includes *only* the property or property interest being taken or a part thereof . . . ." (Italics added.) Here, the sale in question was of a fee interest in a 4000-acre ranch. On the other hand, the property interest being taken is a nonexclusive easement. The sale after the lis pendens therefore did not include *only* the property interest being taken. Thus the Evidence Code section 815 proscription against taking into account sales after a lis pendens is filed in an eminent domain proceeding does not apply to the sale in question.

■ Quite obviously the Evidence Code section 815 proscription is designed to prevent the possibility of influencing the valuation by means of collusive sales manipulating the valuation upward at the expense of the condemning entity. (See *City of Los Angeles* v. *Retlaw Enterprises, Inc.* (1976) 16 Cal.3d 473, 483 [128 Cal.Rptr. 436, 546 P.2d 1380]—the owner cannot be permitted to "write his own check," in that case by project enhanced value in a purchase after the date of probable inclusion in the public project; see also *State of Cal.* ex rel. *Dept. of Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 559-560 [49 Cal.Rptr. 64].) It is apparent in this case that the bankruptcy sale of the fee after the filing of the lis pendens involved no aspect of this policy consideration underlying the proscription.

## IV

■ Owners contend the trial court erred in excluding the sale of 310 acres by the state to them as this was the most comparable free market sale.

This "sale" actually was a trade to the state by Owners of 768 acres, valued at $11 million, from their 4000-acre parcel, and Owners' payment of $1,060,000 to the state in exchange for Owners receiving 310 acres of state-owned property valued at $12,060,000. During the trial SDG&E objected on grounds the comparable "sale" was part of an integrated transaction incapable of segregation and inadmissible because Evidence Code section 822, subdivision (a)(1), prohibited disclosing to the jury the part of the exchange involving Owners' 768 acres which the state could have taken by eminent domain for the new Otay Mesa prison site. The trial court ruled the exchange was an integrated transaction, part of which involved property that could be taken by eminent domain, and the entire transaction was inadmissible under Evidence Code section 822.

Evidence Code section 822 reads, in part: "(a) In an eminent domain or inverse condemnation proceeding, notwithstanding the provisions of Sections 814 to 821, inclusive, the following matter is inadmissible as evidence and shall not be taken into account as a basis for an opinion as to the value of property: [¶] (1) The price or other terms and circumstances of an acquisition of property or a property interest if the acquisition was for a public use for which the property could have been taken by eminent domain." (Stats. 1980, ch. 381, § 5, p. 758.)

Had the trial court ruled in favor of the Owners on this transaction, the transfer of the 768 acres to the state at $14,300 per acre would not have been admitted due to the proscription of Evidence Code section 822, but the transfer of 310 acres to the Owners at a value approaching $40,000 per acre would have been admitted. This obviously would have presented a skewed picture of the valuation actually involved in the transaction considered in its entirety. Under these circumstances the trial court did not abuse its discretion in ruling both transfers were part of the same transaction, and thus the 310-acre valuation was not admissible.

Since Evidence Code section 822, subdivision (a)(1), applied to the transaction and precluded evidence of an integral part of it, the issue here is to be distinguished from the question involved in *People* ex rel. *Dept. Pub. Wks.* v. *Reardon* (1971) 4 Cal.3d 507, 515 [93 Cal.Rptr. 852, 483 P.2d 20]. *Reardon* held admissible as a comparable sale under Evidence Code section 816 an exchange of properties in which the parties to the transaction had fixed a monetary value on the exchanged properties. *Reardon* was not concerned with a transaction subject to application of Evidence Code section 822, subdivision (a)(1). Thus, Owners' reliance on the *Reardon* case is not well taken.

V

Owners contend the trial court erred in refusing to instruct the jury that a seller of real property has a duty to disclose to a purchaser hidden

defects which are known to the seller but unknown to and not readily observed by the purchaser. The trial court refused the instruction after SDG&E objected that a seller's duty to disclose concealed defects was not an issue in the case, the proposed instruction presented a legal theory inconsistent with Owners' theory at trial and the evidence did not support the instruction.

During the trial the court had allowed extensive testimony concerning the controversy about potential adverse biological effects resulting from the electromagnetic field produced by a transmission line. The basis for allowing this testimony was Owners' proffered reason that these potential adverse biological effects were widely known and potentially generally feared, and would reduce the market value of Owners' property in its "after" condition.

Having caused the evidence to be received on this basis, Owners were presenting a directly inconsistent "hidden" defect theory to support the instruction. Moreover, the instruction was not supported by the evidence since Owners' evidence was that the electromagnetic effect was generally known and created buyer fear.

Since the hidden defect disclosure instruction was inconsistent with Owners' theory and lacked evidentiary support, there was no error in refusing it.

## VI

 In case number D005359 Owners contend their October 1986 notice of appeal from December 1985, June 1986 and September 1986 orders relating to denial of their litigation expenses was timely filed. Thus, Owners assert SDG&E's motion to dismiss the appeal as untimely should be denied and Owners' contention they are entitled to litigation expenses as part of "just compensation" under the United States Constitution should be heard. We have concluded the appeal is untimely and we must dismiss the appeal. Even if we assume this conclusion is in error, binding precedent precludes the recovery of litigation expenses.

 Failure to file a notice of appeal within the time prescribed in rule 2 or rule 3 of the California Rules of Court[2] is a jurisdictional defect requiring the appellate court to dismiss the appeal. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].)

Under rule 2, a notice of appeal must be filed within 60 days after the date of mailing notice of entry of judgment by the clerk or of service of written notice of entry of judgment by any party, or within 180 days after the date of entry of judgment, whichever is earliest, unless time is extended

---

[2] All rule references are to the California Rules of Court unless otherwise specified.

by rule 3. (Rule 2(a).) Date of entry of an appealable order is the date of entry of the order in the permanent minutes unless the order directs otherwise, or is the date of filing the order if it is not entered in the minutes. (Rule 2(b)(2) and (b)(3).)

Generally, rule 3 grants a 30-day extension of the appeal filing period after entry of an order denying a motion for a new trial where such a motion is made, and a similar extension where a timely motion to vacate is filed. (Rule 3(a) and (b).) Rule 3(a) provides, however, that "in no event may such notice of appeal be filed later than 180 days after the date of entry of the judgment whether or not the motion for new trial has been determined." Rule 3(b) has a similar outside time period of 180 days from entry of judgment for filing the notice of appeal where a motion to vacate judgment is made.

■ For the purposes of rule 3, a motion for reconsideration has the same effect as a motion for new trial or a motion to vacate, i.e., the timely filing of a motion to reconsider extends the time for filing the notice of appeal from the original ruling until 30 days after entry of the order denying reconsideration. (*Tunis* v. *Barrow* (1986) 184 Cal.App.3d 1069, 1075 [229 Cal.Rptr. 389].) Here, Owners' January 1986 motion for reconsideration extended the period to file the notice of appeal to 30 days after entry of the order denying reconsideration, i.e., 30 days after June 30, 1986, unless the outside 180-day time limit applies.

An order denying a motion to recover litigation expenses is an appealable order. (§ 904.1, subd. (b); *City of San Leandro* v. *Highsmith* (1981) 123 Cal.App.3d 146, 152, fn. 3 [176 Cal.Rptr. 412].) Section 906 provides, in part: "Upon an appeal pursuant to Section 904.1 . . . , the reviewing court may review the . . . decision and any intermediate ruling, preceding, the order or decision which involves the merits or necessarily affects the . . . order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order may be entered, . . . . *The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken.*" (Italics added.)

■ Considering the last sentence of section 906, italicized above, and the above-quoted language of rule 3(a) *in no event* permitting an appeal beyond 180 days after entry of the judgment (order) whether or not the motion has been determined, we think it is quite clear Owners' time to appeal the December 20, 1985, order denying litigation expenses expired 180 days after that date, and none of the other motions or orders extended

this outside limit to appeal the appealable December 20, 1985, order. Accordingly, Owners' October 1986 appeal concerning the litigation expense denial must be dismissed.

Even assuming we are wrong in reaching this conclusion, the identical issue concerning denial of litigation expenses in eminent domain proceedings was considered and rejected by the California Supreme Court in *County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538]. We are bound to follow that decision (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]) and we decline Owners' invitation to hold that "[t]he basis of *Ortiz* is clearly erroneous and accordingly should not be followed."

## DISPOSITION

In case number D003940, the judgment in condemnation is affirmed. The appeal in case number D005359 is dismissed.

Kremer, P. J., and Staniforth, J.,* concurred.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.