## VILLAGE OF ST. LOUIS PARK v. MINNEAPOLIS, NORTHFIELD & SOUTHERN RAILWAY COMPANY AND OTHERS.[1]

June 22, 1923.

No. 23,466.

**Purchaser of electric road bound by terms of vendor's contract with plaintiff village.**

1. Where, pursuant to statutory authority, a municipal corporation and an electric traction company have agreed upon the terms by which streets may be crossed by an electric railway, and the use of steam as a motive power is prohibited by such contract, a purchaser of the electric traction company's line takes it subject to such prohibition. It cannot accept the beneficial and renounce the detrimental conditions.

**Right of eminent domain not impaired by terms of contract.**

2. Such a contract does not limit the power of the purchasing company, if it has such power, to acquire by condemnation the right to use the street crossings for a steam railway.

**Case distinguished.**

3. City of International Falls v. Minnesota D. & W. Ry. Co. 117 Minn. 14, 134 N. W. 302, distinguished.

Action in the district court for Hennepin county to restrain defendant company and its servants from using steam as a motive power on any trains or engines running through plaintiff village. From an order, Leary, J., granting a temporary injunction, defendants appealed. Affirmed.

*Lancaster, Simpson, Junell & Dorsey,* for appellants.

*O. M. Peabody* and *Fish, Carleton, Cherry & Carleton,* for respondent.

STONE, J.

The village of St. Louis Park brings this action for the purpose of enjoining the Minneapolis, Northfield & Southern Railway Com-

[1]Reported in 194 N. W. 327.

pany "from using steam as a motive power on any of its trains and engines running through the said village." There are three individual defendants who are employes of the railway company, but as they are joined only as its representatives they need not be considered apart from it. We are concerned only with the rights of the village of St. Louis Park and the Minneapolis, Northfield & Southern Railway Company, and will refer to them as plaintiff and defendant.

Defendant is the successor of the Minneapolis, St. Paul, Rochester & Dubuque Electric Traction Company, better known by its equine name of "Dan Patch Line," and it will be so mentioned in this opinion.

The plaintiff is a suburb, and the territory comprised within its limits is situated southwesterly of and on the outskirts of Minneapolis. In 1914 plaintiff, by its village council, at the request of the Dan Patch line, passed an ordinance granting to the latter, "its successors, and assigns, permission to construct, maintain and operate lines of *electric traction* railroad" across numerous streets and alleys in plaintiff village, in said ordinance enumerated. That ordinance had to do only with the operation of an electric traction railroad. Section 10 is in part as follows:

"The use of steam by said electric traction company or its successors and assigns as motive power, is hereby prohibited."

The ordinance became effective "from and after its publication and the acceptance thereof by said electric traction company." The Dan Patch Line immediately and formally accepted "the terms and conditions" of the ordinance.

Defendant is a railroad corporation organized under the laws of South Dakota for the purpose, according to its answer, of acquiring and operating a railroad between the cities of Minneapolis and Northfield and of making extensions to other points in Minnesota and other states. So far as the record discloses, it has all the powers of eminent domain granted by the statutes of Minnesota to railroad corporations.

The Dan Patch Line became insolvent, went through a receivership, and at the resulting sale in July, 1918, the defendant purchased its "assets, franchises and privileges," including the right of way and track through plaintiff village.

Defendant alleges that immediately after purchasing the property it expressly rejected the ordinance in question, and so advised plaintiff village in writing, and "released, reconveyed and quitclaimed to the plaintiff village any rights or privileges which may have been acquired" by the Dan Patch Line under and pursuant to such alleged ordinance, and that ever since the purchase the defendant has operated the property under and by virtue of the general powers and authority granted to it by its charter and the laws of Minnesota. It clearly appears however that, while the defendant attempted to do what it claims to have done, the plaintiff has never waived any of its rights under the ordinance or consented to the defendant's attempted renunciation thereof.

The Dan Patch Line originally conducted only a passenger business. Its original equipment seems to have consisted for the most part of combination passenger and baggage cars driven by electricity generated by gasolene motors. It developed that the road could not exist on passenger business alone, and at or about the time of the receivership freight trains began to be operated over the line. The defendant is now running from 2 to 5 freight trains daily through the plaintiff village. Such trains average 20 cars each, and are hauled by ordinary steam locomotives. This practice has continued, to a constantly increasing degree, since the purchase of the property by defendant.

Considering its ordinance as a franchise and contract binding upon defendant, plaintiff by this action seeks to restrain defendant from using steam as a motive power. A temporary injunction was granted by the trial court, the effect of which was stayed (following Larson v. Minnesota N. W. Electric Co. 131 Minn. 183, 154 N. W. 948), for a sufficient period to enable the defendant to institute condemnation proceedings.

Defendant insists that it took over the Dan Patch Line through plaintiff village, including the street crossings, free from the ordi-

nance prohibition against the use of steam as a motive power. Also that, and in any event, such a restriction by contract is void as against public policy, being a limitation upon the state granted powers of eminent domain which defendant claims.

1. The ordinance of 1914 was valid. It bound in a contractual way both the village and the Dan Patch Line. The statute, G. S. 1913, § 6236, expressly authorizes such an agreement, upon the "manner, terms and conditions in and upon which" a railway may cross streets. By this statute any lawful terms and conditions are permitted. Therefore the contract expressed by the ordinance was not only within the charter powers of the contracting parties, but was expressly authorized by statute. It cannot, as defendant claims, be repudiated by a party thereto or by any one standing in the place of either contracting party with respect to the subject matter of the contract. The defendant is the immediate successor in interest of the Dan Patch Line. As such it owns its right of way over the private property in plaintiff village. As such, also, it owns the right to cross, but only as an electric traction line, the streets specified in the ordinance. Such crossing rights are enjoyed by virtue of the ordinance, or they do not exist. Without the ordinance which it seeks to repudiate, defendant even as an electric traction line has no right to cross plaintiff's streets, for it has never acquired such privilege by condemnation. Either it has the ordinance rights or it has no rights. It takes something more than a railroad charter to confer the right to lay railway tracks and operate trains across city and village streets. To hold otherwise would enable any electric traction company in the state to turn over for all the purposes of steam railroading the street crossing privileges it now enjoys. The existence of such an indirect and devious method of procuring valuable franchises of course is not asserted by defendant, but would follow from the adoption of its argument. It finds no warrant in our law.

Such a right, under the controlling statutes, must be acquired by franchise or by condemnation. In neither way and in no way has the defendant acquired the right to cross the public ways of plain-

tiff village by cars or trains hauled by steam locomotives. We hold therefore that the temporary injunction was properly granted.

2. We are not here called upon to determine just what powers of eminent domain belong to defendant. That question ought to be and is left to be determined in the usual way in such condemnation proceedings as defendant may commence. If the public interest now requires that defendant have the right to cross plaintiff's streets with steam drawn trains, it will not be denied that right if it proceeds in a proper way to acquire it, and complies with conditions that in a lawful way may be imposed. The contract and ordinance of 1914, while now in effect, must yield if rights now withheld by it should be acquired by defendant through condemnation proceedings. See Nichols, Eminent Domain, § 22; South Chicago City Ry. Co. v. Calumet Electric St. Ry. Co. 171 Ill. 391, 49 N. E. 576; Doane v. Chicago City Ry. Co. 160 Ill. 22, 45 N. E. 507, 35 L. R. A. 588.

Other cases cited on this head by counsel for appellant go only to the extent of declining to enjoin condemnation proceedings for the purpose of acquiring rights inconsistent with existing contracts. They support the doctrine now under consideration, but do not support the appellant in its present contention. Such cases hold only that condemnation proceedings under such circumstances will not be enjoined. That is our holding also. The trouble with defendant's position is that it has not commenced condemnation proceedings. When and if it does, this decision may be taken as authority for not enjoining its action, if upon a consideration of that question in its proper place it is determined that defendant has the power to condemn the right to cross plaintiff's streets and other public ways with steam drawn railroad equipment.

To illustrate, in Chicago & Western Indiana R. v. Illinois Cent. R. Co. 113 Ill. 156, the statute involved provided that where one road desired to cross another it might be done by agreement, in default of which the crossing right might be condemned. There was an agreement between the two roads, authorized by statute, giving the defendant a right of way across the plaintiff's tracks on condition that it should not construct more than two tracks. Notwithstanding that agreement and when its need therefor arose, the defendant

subsequently attempted to condemn a right of way for additional tracks. It was with obvious propriety that an injunction against the condemnation proceedings was denied. If the defendant had been attempting to proceed arbitrarily and without the aid of condemnation proceedings, the result undoubtedly would have been otherwise and its action would have been enjoined.

Public service corporations hold the powers of eminent domain which the state has granted to them for the public interest which requires that such powers remain unfettered by the contracts of the holders. Boards of directors cannot bargain away the right of the future to such improvements as progress and changing conditions demand. Therefore a contract of the kind now in question, though valid, especially when authorized by the statute as this one is, cannot prevent the subsequent acquisition by condemnation, for public purposes and adequate compensation, of property and rights inconsistent with or expressly denied by such contract. To hold otherwise would be to place upon progress shackles forged of the ignorance of the past concerning the future and its needs.

But, granting that a public service corporation may not bargain away its right of eminent domain, it does not follow that a contract and franchise such as we now have under consideration is void ab initio where there is such an authorizing statute as section 6236. Under that it is certainly a lawful condition to impose on an electric traction company that it shall not use steam as a motive power. That right, although withheld by the contract and franchise, may be acquired if the occasion arises and the conditions and law prevailing at the time being permit. Contracts such as this are not like those wholly ultra vires the contracting parties, for example, the one considered in State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656. It is obviously not beyond the powers of an electric traction company, in order to get street-crossing rights without the delay and expense of condemnation proceedings, to agree not to use steam as a motive power. But it is beyond the powers of public and private corporations effectually to contract that in the future no resort shall be had to the power of eminent domain to enlarge rights given by contract.

3. Defendant relies with confidence upon the decision in City of International Falls v. Minnesota, D. & W. Ry. Co. 117 Minn. 14, 134 N. W. 302. That in our view is a very different case. There the defendant for a long time had owned and operated its main line single track across *one* of the streets in plaintiff city. It desired to lay additional tracks across this street and had the grading done before the attempt was made to enjoin the crossing. A temporary injunction was denied by the district court. The order was affirmed because it was apparent that the plaintiff had an adequate remedy at law in that its rights could be fully protected in condemnation proceedings which it was assumed the defendant would have to commence.

There was no purpose to convert an electric line into a steam railroad and the plaintiff city had no contract rights to protect as is the case here. Moreover, and the result was expressly so reached, it was held that, while the city could litigate in the confidently anticipated condemnation proceedings the necessity of the taking, "that it would be unsuccessful in any such defense is too clear to justify saying that this presents any substantial ground for an injunction." And therein lies the controlling distinction between that case and this. Here we have no such record as will justify us in saying that the necessity of taking for the purpose of a steam railroad, not of one, but of numerous street crossings extending across from north to south the plat of the plaintiff village, is so clear that such taking should not be prevented pending the proper proceedings to determine its necessity and the terms and conditions, if any, which should be imposed if it is found necessary.

The situation is such that the plaintiff has not in its right to appear in condemnation proceedings that speedy, practical and efficient remedy which is afforded by injunction.

In passing it is only proper to remark that, although we affirm the order appealed from, we do not agree with the respondent's complaint that the appeal was not justified and was taken only for purposes of delay. The appeal was a proper method of bringing here for review the questions involved. The defendant had that right and undoubtedly the trial court, if timely application is made, will

grant such further stay as is necessary to enable it to take such proceedings as are necessary to protect its rights in the premises.

The order appealed from is affirmed.