[No. B072610. Second Dist., Div. Three. Sept. 29, 1993.]

CITY OF GLENDALE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GIOVANETTO ENTERPRISES, INC., Real Party in Interest.

## COUNSEL

Scott H. Howard, City Attorney, Carmen O. Merino, Deputy City Attorney, Freilich, Kaufman, Fox & Sohagi, Benjamin Kaufman and Deborah J. Fox for Petitioner.

No appearance for Respondent.

Laskin & Graham and Richard Laskin for Real Party in Interest.

## OPINION

**CROSKEY, Acting P. J.**—The City of Glendale (City) seeks a writ of mandate directing the trial court to vacate its order finding that the City had breached a long term lease of City-owned property to the real party in interest, Giovanetto Enterprises, Inc. (GEI), by exercising its power of eminent domain prior to the end of the term.

As we conclude that the condemnation of a leasehold interest by a public entity lessor cannot breach a contractual commitment in a lease for a minimum fixed term, we grant the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 1985, City entered into a 20-year written lease under which GEI agreed to lease certain City-owned property for the operation of a restaurant. The lease agreement contained no provision regarding the City's possible future exercise of its power of eminent domain over the leasehold. Indeed, evidence presented to the trial court failed to demonstrate that the issue was ever discussed by the parties during the negotiation of the lease terms. The City did, however, expressly reserve the right to unilaterally terminate the lease *after* 10 years, and provided for payment of certain costs, expenses and loss to GEI should this option be exercised.[1]

In 1990, just short of five years after the commencement of the lease, the City apparently determined that the leased premises were needed for the

[1]The relevant lease provisions are found in paragraphs 19, 20 and 21 of the lease:

"19. RIGHT TO TERMINATE

"(a) Following the expiration of ten (10) lease years, Lessor may elect to terminate this Lease where Lessor determines that the premises is needed for a municipal purpose. Lessor shall give Lessee one year's written notice of any election to terminate.

"(b) In the event that this Lease is terminated pursuant to Section 19(a), Lessor shall:

"(i) Pay to Lessee the Fair Market Value (not replacement value) of the trade fixtures and equipment of Lessee in place at the restaurant on the date of termination. The Fair Market Value of the trade fixtures and equipment shall be determined by appraisal, with Lessor and Lessee each providing separate appraisals. In the event that the parties are unable to agree on the Fair Market Value after the submission of appraisals, a third independent appraiser shall be chosen by the two persons or companies providing the initial appraisals. Said third appraisal shall be binding on the parties thereto.

"(ii) In lieu of paying for said trade fixtures and equipment, Lessee may elect to have Lessor relocate Lessee's fixtures and equipment pursuant to Section 21 herein.

"20. LEASEHOLD VALUE; GOODWILL.

"Lessee agrees that in the event this lease is terminated by the Lessor, Lessee hereby waives and shall have no right to compensation for any leasehold value to which he might otherwise be entitled, since the rent has been established in contemplation of the Lessor's right to effect such termination. Lessee further waives and shall have no right to compensation for the goodwill of the business, if any, should Lessor elect to terminate this Lease.

"21. RELOCATION.

"Lessee agrees that in the event of termination of the lease by the Lessor (absent default by Lessee), Lessee shall have the right to receive in lieu of any relocation assistance to which he might otherwise be entitled under California Government Code Section 7260 et seq., the actual cost of moving the restaurant, and the cost of reinstallation of fixtures and equipment from the premises to a relocation site for the restaurant. Lessor shall actively assist Lessee in locating a satisfactory relocation site for the restaurant."

construction of a public building and decided to condemn GEI's leasehold.[2] On February 8, 1990, the City filed a complaint in eminent domain. Pursuant to Code of Civil Procedure section 1255.010, the City deposited approximately $294,000 representing the estimated fair market value of GEI's leasehold interest. On April 25, 1990, pursuant to a stipulation, GEI withdrew this deposit thereby waiving any claim as to the lack of a public purpose in the condemnation of the leasehold. (Code Civ. Proc., § 1255.260;[3] *San Diego Gas & Electric Co. v. 3250 Corp.* (1988) 205 Cal.App.3d 1075, 1081-1082 [252 Cal.Rptr. 853].)

On March 19, 1990, GEI filed an answer to the City's complaint and a cross-complaint in which it alleged that the City's exercise of eminent domain constituted a breach of the lease agreement entitling it to contract damages rather than the recovery permitted by eminent domain law, which GEI contends would be more limited. Certain law and motion proceedings followed, which related to the City's initial position that the lease was unenforceable because not specifically authorized by a City ordinance. The City's charter prohibits any lease for a term in excess of five years without such an ordinance. Ultimately, it was discovered that a proper ordinance had been enacted and the City's demurrer to GEI's cross-complaint was overruled after we issued a writ of mandate so directing the trial court.[4]

Following our remand of the case, the trial court bifurcated the issue of the City's liability for breach of contract under GEI's cross-complaint from

---

[2]On January 9, 1990, the city council adopted a resolution declaring a public interest and necessity for the acquisition of GEI's leasehold interest. Specifically, the council stated, "That the public interest and necessity require the acquisition of the leasehold interest, goodwill, fixtures and equipment, of and concerning the real property at 125 North Glendale Avenue, Glendale, California, for a public use, to wit: a public service building to house municipal offices. The City is authorized to acquire the interests in the aforementioned real property, including the leasehold interest, goodwill, and fixtures and equipment therein, pursuant to provisions of the State of California Constitution, Article I, Section 14, including, but not limited to, Section 1240.110 of the California Code of Civil Procedure."

[3]Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

Section 1255.260 provides: "If any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of law of all claims and defenses in favor of the persons receiving such payment except a claim for greater compensation."

[4]This case has been brought before us in two prior petitions for writ relief. (*City of Glendale v. Superior Court* (Nov. 29, 1990) B053143 [nonpub. opn.] and *Giovanetto Enterprises, Inc. v. Superior Court* (May 28, 1992) B065561 [nonpub. opn.].) In the first, we directed the trial court to sustain the City's demurrer because GEI had not alleged the enactment of the required ordinance and, at that time, could not demonstrate that one existed. In our second opinion, we recalled the remittitur on our first decision and vacated our order. A proper ordinance had in fact been enacted and GEI had produced a copy. We treated this as newly discovered evidence and made a new order allowing GEI to proceed on its contract claim. However, as we discuss below, we did not reach or determine the question of whether City had in fact breached the lease agreement by condemning the leasehold.

the issue of the damages GEI is entitled to receive, whether under the City's complaint or its own cross-complaint. After receiving some evidence from the parties,[5] the court determined as a matter of law, and based largely upon language utilized by us in our unpublished opinion granting GEI writ relief,[6] that the City's exercise of eminent domain on the leasehold constituted a breach of the lease for which GEI was entitled to *contract* damages. Indeed, the trial court held that this result was compelled by our decision as the law of the case.[7]

Pending the setting of a trial date to resolve the remaining issue of damages, the trial court invited the City to bring the matter once again to this court for resolution of the question which is now before us.

### ISSUE PRESENTED

The principal issue which we must resolve is whether a public entity lessor, which is a party to a lease with a minimum fixed term, may be liable for breach of contract for exercising its power of eminent domain over the leasehold interest prior to the expiration of such term.

---

[5] In addition to proof of the lease agreement itself, the City's evidence demonstrated that there had been no discussion during negotiations of the possibility or consequences of a condemnation of GEI's leasehold interest. GEI's witness conceded that he did not recall discussing the subject either, but had certainly been "led to believe that we [i.e., GEI] would be allowed to stay uninterrupted for a 10-year period in order to make it a viable business transaction for our enterprise."

[6] In our opinion we said, "City opposes GEI's request to vacate our prior decision (B053143), now asserting that allowing [GEI] to seek damages for breach of contract will nullify a public policy favoring the exercise of eminent domain. The argument overlooks the fact that it is not City's power to exercise its eminent domain power which is at issue here. The issue is the amount of damages arising from City's breach of contract, a contract which was specifically authorized by adoption of Ordinance No. 4685. [¶] Finally, City argues that [GEI]'s withdrawal of monies deposited pursuant to the eminent domain proceeding constitutes a waiver of the right to assert any other claim. [GEI]'s withdrawal of the monies deposited pursuant to Code of Civil Procedure section 1255.260 is a waiver of claims and defenses against the *taking* of the property pursuant to eminent domain. But the withdrawal of the deposit is not a waiver of the right to seek *greater* damages for breach of contract." (Italics in original.)

[7] Specifically, the trial court stated, ". . . the city has a right to exercise the power of eminent domain. It's apparently doing that in this case. If it does, it has to pay contract damages, that's what the Court of Appeal said, if they're higher. I think that's exactly what the Court of Appeal is saying. . . . [¶] The city did not terminate the lease after 10 years, but, rather, through the exercise of the power of eminent domain seeks to terminate the lease earlier than the 10-year period. That I find to be breach of the lease, and feel mandated to reach that conclusion by the language in the Court of Appeal's decision in this case, which I find to be the law of the case. [¶] Therefore, we have a lease and a breach of that lease by reason of the exercise of the power of eminent domain. [¶] Now, we have damages to try on the breach of lease, and we have damages to try in the eminent domain proceeding. . . ."

We answer that question in the negative. In resolving the issue we also consider GEI's arguments regarding estoppel and law of the case. However, we must first address GEI's procedural argument that this is not a proper matter for extraordinary relief.

DISCUSSION

1. *This Issue Is Properly Resolved by Writ*

 GEI contends that appellate review at this incomplete stage of these bifurcated proceedings is not warranted. It is true that, in general, an appellate court should not intervene in the middle of a bifurcated trial. However, there are rare exceptions where bifurcation will isolate an issue which is separate and independent from those of all other claims and the circumstances are "so unusual" that postponement of final judgment on the bifurcated claim would cause "so serious a hardship and inconvenience as to require [the court] to augment the number of existing exceptions [to the single judgment rule]." (*Armstrong Petroleum Corp.* v. *Superior Court* (1981) 114 Cal.App.3d 732, 736-737 [170 Cal.Rptr. 767].)

 Moreover, relief by extraordinary writ is appropriate where the party seeking the writ lacks an adequate means, such as an immediate direct appeal, by which to obtain relief. (Code Civ. Proc., § 1086; *Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224]; *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1274 [258 Cal.Rptr. 66].) Included among this category of cases are those in which relief by writ is necessary to prevent an expensive trial and ultimate reversal. (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 301 [90 Cal.Rptr. 345, 475 P.2d 441]; *City of Huntington Beach* v. *Superior Court* (1978) 78 Cal.App.3d 333, 339 [144 Cal.Rptr. 236].) Even where an adequate remedy is available by appeal, the general requirement of inadequacy of the appellate remedy is relaxed where the issue raised in a writ petition is of widespread public importance. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 816 [210 Cal.Rptr. 211, 693 P.2d 796]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 851 [143 Cal.Rptr. 695, 574 P.2d 766]; *Simon* v. *Superior Court* (1992) 4 Cal.App.4th 63, 68 [5 Cal.Rptr.2d 428].)

 Here, the City could, of course, await trial of the damage issue and appeal from the final judgment. However, if the City prevails on its contention that a public entity has no duty in its capacity as the landlord to a lessee of city-owned property to refrain from the exercise of the power of eminent domain, no trial of the contract damage issue would be necessary. Relief by petition for writ of mandate is thus necessary to correct an error which

would otherwise result in an expensive trial and possible reversal. (*City of Huntington Beach* v. *Superior Court, supra*, 78 Cal.App.3d at p. 339.)

Further, the issue presented is both novel and of general importance. It impacts any public entity which also acts in a capacity as a landlord of public property. The possible application of a damage standard different from that specified in the eminent domain law is a matter of no small concern. As we discuss below, the trial court's decision is erroneous and could well prejudice the City's case to the extent that it exposed the City to a damage claim not authorized by law. These circumstances bring this matter within the category of cases in which prompt appellate review of the liability phase of a bifurcated trial is appropriate.

*2. The City's Exercise of the Power Eminent Domain Did Not Constitute a Breach of the Lease*

 The lease agreement provides in paragraph 19(a), that "Following the expiration of ten (10) lease years, Lessor may elect to terminate this Lease where Lessor determines that the premises is needed for a municipal purpose. Lessor shall give Lessee one year's written notice of any election to terminate." This language demonstrates the City's contractual commitment not to elect to terminate the lease until *after* 10 years have expired and then only to do so for a municipal purpose. It also appears to be clear that a termination, *under the lease agreement*, could not be effective earlier than the end of the 11th year since a 1-year notice period is required and the election by the City could not be made (nor the required notice given) until the "*expiration*" of the 10th year.

Testimony given during the liability phase of the bifurcated trial reveals that the guaranteed 10-year term was specifically bargained for by *both* parties and that City inserted the right to terminate with a 1-year notice after the expiration of 10 years and only for "a municipal purpose." GEI was able to negotiate the guaranteed term because the building, in 1985, was in a state of disrepair requiring investment of substantial funds to rehabilitate the premises and the City wanted a viable business in the location.

However, this does not support GEI's claim that the City had contractually promised not to exercise its eminent domain power. Clearly, there is no *express* promise. GEI contends that such a commitment is necessarily implied by the terms of the lease. We disagree.

The contractual commitments assumed by the City under the lease were entered into in its proprietary capacity as the owner of the property involved.

Its agreement not to terminate the lease for a fixed period of time was a legal and binding commitment; but it says nothing about the exercise of its sovereign and governmental authority to condemn the leasehold. For our purposes, this issue must be analyzed as though the City, as condemnor, is an entity which is separate and apart from its capacity as lessor. In our view, the promise made as lessor cannot result in the loss of a proper governmental power. There are two reasons for this. First, such a promise cannot be implied and, second, even if we were to do so, it could not be enforced, as a governmental entity may not contract away its sovereign authority.

■ "[I]mplied covenants are not favored in the law because they interfere with the parties' right to freely set such contractual terms as they choose. [Citation.]" (*Shapiro* v. *United California Bank* (1982) 133 Cal.App.3d 256, 261-262 [184 Cal.Rptr. 34].) A court's authority to imply a term in a contract is circumscribed by certain criteria: ". . . (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract. . . ." (*Id.*, at p. 262, quoting *Cousins Inv. Co.* v. *Hastings Clothing Co.* (1941) 45 Cal.App.2d 141, 149 [113 P.2d 878].)

■ This record does not establish that either of the parties considered the question of a possible condemnation. What was negotiated was a 20-year lease in which the City reserved the right, *as lessor*, to terminate upon the payment of certain specific damages, after the expiration of 10 years. Any property right is subject to loss (or, more precisely, public purchase) by condemnation. The waiver by the City of its eminent domain power was certainly not indispensable to effectuate the intention of the parties. We are not prepared to assume that such a commitment would have been made by the City had the question been raised during the negotiations. Thus, we cannot imply such a promise by the City into the lease.

More importantly, the City, as a governmental entity, could not in any event abridge by contract its sovereign authority to take property by eminent domain. ■ It is well established that governments cannot divest themselves by contract of the right to exert their governmental authority "in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the

preservation of society or to secure the performance of essential governmental duties." (*Pennsylvania Hospital* v. *Philadelphia* (1917) 245 U.S. 20, 23 [62 L.Ed. 124, 127-128, 38 S.Ct. 35]; see also *United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1, 19, fn. 16 [52 L.Ed.2d 92, 108, 97 S.Ct. 1505]; *Cincinnati* v. *Louis. & Nash. R.R. Co.* (1911) 223 U.S. 390, 400 [56 L.Ed. 481, 483, 32 S.Ct. 267].)

While no California case has directly addressed the issue of whether a contractual waiver of the eminent domain power could be made, California courts have held that other governmental powers over land use are not subject to abridgment by contract. For example, in a case involving a city's authority to alter its zoning, contrary to a contractual commitment made in an annexation agreement with the plaintiff property owner, the court held that the police power to enact and enforce land use regulations in the future could not be contracted away. (*Carty* v. *City of Ojai* (1978) 77 Cal.App.3d 329, 342 [143 Cal.Rptr. 506].) The *Carty* court cited a 1927 California Supreme Court opinion which had noted that " '[t]he police power being in its nature a continuous one, must ever be reposed somewhere, and cannot be barred or suspended by contract or irrepealable law. It cannot be bartered away even by express contract.' [Citations.] It is to be presumed that parties contract in contemplation of the inherent right of the state to exercise unhampered the police power that the sovereign always reserves to itself for the protection of peace, safety, health and morals. Its effect cannot be nullified in advance by making contracts inconsistent with its enforcement. [Citations.]" (*Mott* v. *Cline* (1927) 200 Cal. 434, 446 [253 P. 718]; see also *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546], cert. den. (1977) 429 U.S. 1083 [51 L.Ed.2d 529, 97 S.Ct. 1089]; *Smith* v. *City and County of San Francisco* (1990) 225 Cal.App.3d 38, 55 [275 Cal.Rptr. 17].)

This same standard applies to the eminent domain power. Like the police power, the power of eminent domain is one of those inherent powers which belong to government, without which it could not well perform its functions. (*Pennsylvania Hosp.* v. *Philadelphia, supra,* 245 U.S. at pp. 23-24 [62 L.Ed. at pp. 127-128]; *Cincinnati* v. *Louis. & Nash. R.R. Co., supra,* 223 U.S. at p. 400 [56 L.Ed. at pp. 483-484]. Accord, *Gilmer* v. *Lime Point* (1861) 18 Cal. 229, 250-251. See generally, 8 Witkin, *Summary of Cal. Law* (9th ed. 1988) Constitutional Law, § 918.)

While, as we have observed, no California case has directly addressed the issue of whether a contractual abrogation of such power could be made, one court has forcefully rejected the proposition that the people of a municipality

could, by initiative and referendum, abrogate their city council's authority to exercise that power. The court stated: "The effect of the abandonment of the right of eminent domain would mean that if the city desires to acquire sites, the city would have to pay any price the owners might ask or else abandon the project. The very fact that the city can condemn in many instances causes the owner to accept the fair market value." (*Alexander* v. *Mitchell* (1953) 119 Cal.App.2d 816, 821-822 [260 P.2d 261].)

■ What the people of a city cannot bring about by initiative and referendum, city officials also cannot effect by contract, for it is simply contrary to sound public policy to recognize or permit any abrogation of the important power of eminent domain. It is too fundamental to a government's proper discharge of its responsibilities to protect and serve the public interest.

■ The power of eminent domain extends both to tangible and intangible property rights, such as contracts. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 69-70 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].) ["Government Code section 37350.5, for example, authorizes a city to 'acquire by eminent domain *any* property necessary to carry out any of its powers or functions.' "]; Accord, *Cincinnati* v. *Louis. & Nash. R.R. Co.*, *supra*, 223 U.S. at p. 400 [56 L.Ed. at pp. 483-484].) Thus every contract, whether between the government and an individual or between individuals only, is subject to the law of eminent domain, and there enters into every agreement the unwritten condition that it is subject to appropriation for public use. (*Cincinnati* v. *Louis. & Nash. R.R. Co.*, *supra*, 223 U.S. at p. 400 [56 L.Ed. at pp. 483-484]; see also, *People* v. *City of Los Angeles* (1960) 179 Cal.App.2d 558, 573 [4 Cal.Rptr. 531].)

■ The foregoing principles compel us to conclude that GEI's lease did not contractually restrict the City's authority to condemn GEI's leasehold interest. Put another way, the City had no contractual obligation to refrain from exercising its power of eminent domain. Therefore, the City's condemnation of GEI's leasehold interest did not constitute a breach of the lease, and GEI is not entitled to recover contract damages.

That is not to say, however, that the contractual commitments made by the City regarding termination are not to be considered by the court in determining the fair market value of the leasehold which has been condemned. For example, the lease entitled GEI to stay in this location another six years after the filing of the City's complaint and the payment of the estimated value. This right was lost, as were whatever termination and relocation benefits are

provided for under the lease. In short, the valuation of the leasehold must take into account the special provisions which GEI negotiated in order to protect itself from premature loss of the leasehold interest. Those provisions may or may not give the leasehold a greater value than it might otherwise have received.[8]

### 3. *The City Is Not Estopped*

■ It is well settled that the estoppel doctrine is applicable to government entities where " 'justice and right require it.' [Citations.] Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public[.]' [Citation.] The tension between these twin principles makes up the doctrinal context in which concrete issues are decided." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].) "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Id.*, at pp. 496-497.)

■ The application of the principles of estoppel to defeat the City's power to condemn the leasehold would effectively nullify the strong public policy underlying the exercise of the power of eminent domain. Moreover, no reason exists to apply the doctrine of estoppel. No injustice will result to GEI. It seeks only to be fairly compensated for its loss and it is clearly entitled to that result. Apart from the attorney fee claim, it is not clear to us that there will be any real difference in the amount of compensation to which GEI will be entitled if a contract damage measure is not used. But even if such a difference does exist, any adverse economic impact on GEI will not create such a hardship as to justify the negative effect upon the public interest if we were to conclude that a city's exercise of its sovereign power of eminent domain can constitute a breach of a lease agreement.

---

[8]Indeed, it may well be that a proper valuation of GEI's leasehold interest under eminent domain law will result in a damage award not significantly different than might have been recovered under a contract damage theory. Of course, this excludes the claim of attorney fees asserted by GEI. However, the argument that it is entitled to a contract damage claim because of the potential recovery of attorney fees, not available to it in a condemnation proceeding, necessarily assumes that a breach of contract must have occurred. Such an argument does not provide a reasoned basis for finding a contract breach and, indeed, is circular. In that regard, we note that GEI does not dispute the City's argument that practically all of the attorney fees incurred by GEI are related to its efforts to recover on the contract claim.

### 4. *The Doctrine of Law of the Case Has No Application Here*

 Finally, we reject GEI's argument that the City's breach of the lease was previously resolved by us and is now the law of the case. Our opinion in *Giovanetto* did not establish that the City had breached its contract. The issue of whether or not the City had, in fact, breached the lease agreement has never been before this court. In *City of Glendale* v. *Superior Court, supra,* B053143, the trial court had overruled a demurrer to the complaint. The City challenged that ruling by petition to this court on the ground the City's charter prohibited the lease of City owned property for a period longer than five years except by adoption of an ordinance approved by the council. The City denied that the ordinance had been adopted or approved by the council. In *Glendale*, we granted the petition, holding GEI could not allege a cause of action for breach of contract absent evidence that City had complied with the charter provision and adopted the ordinance.

In *Giovanetto Enterprises* v. *Superior Court, supra,* B065561, GEI provided a copy of the ordinance, which had been discovered only after a lengthy search. Ordinance No. 4685, approving the subject lease, had indeed been adopted and approved by the council. We then ordered that our opinion in *Glendale* be vacated and directed the trial court to reinstate the cause of action for breach of contract.

In *Giovanetto*, we stated, "[I]t is not City's power to exercise its eminent domain power which is at issue here," but rather "the amount of damages arising from City's breach of contract." However, that statement did not and could not amount to a factual finding that the City had, in fact, breached the lease, as that question was not before us. At the time *Giovanetto* was filed, City had already exercised the power of eminent domain. Our statement merely recognized that the City was wearing two hats in this case. It was both a government entity *and* a landlord. The City is a *cross-defendant* in this action solely in its capacity as a landlord.

Only two issues were addressed in *Giovanetto*. The first related to the impact of the discovery of the ordinance which had approved the contract and the consequent need to overrule the City's demurrer to the breach of contract cause of action, which had been interposed based on the absence of the ordinance. The second dealt with the scope of GEI's waiver under Code of Civil Procedure section 1255.260 (see fn. 6, *ante*). We concluded that a waiver of defenses to the taking did not extend to GEI's right to recover greater compensation as a result of any contractual lease rights it might have. This did not amount to a conclusion that a cause of action for breach of the

lease agreement had been established. Rather it was simply another way of saying that GEI is entitled to have the terms of its lease considered in the evaluation of its compensation claim.

We did not intend to nor did we address the *merits* of any cause of action for breach of contract. Accordingly, *Giovanetto* has no law of the case consequence whatsoever on whether or not GEI, in fact, has a meritorious breach of contract claim against City in its capacity as landlord. The contrary conclusion of the respondent court was incorrect.

### DISPOSITION

The alternative writ is discharged. Let a peremptory writ issue directing the trial court to vacate its order determining that the City had breached its lease agreement with GEI and to conduct further proceedings consistent with the views expressed herein.

Hinz, J., and Kitching, J., concurred.