Ronald RASMUSSEN,
et al., Appellants,

v.

The HOUSING AND REDEVELOPMENT AUTHORITY for the City of St. Anthony, Minnesota, Respondent,

and

The Housing and Redevelopment Authority for the City of St. Anthony, Minnesota, petitioner, Respondent,

v.

Ronald Rasmussen, et al., Appellants.

Nos. A05–1418, A05–1419.

Court of Appeals of Minnesota.

May 2, 2006.

David D. Meyer, Steven J. Quam, Fredrikson & Byron, P.A., Minneapolis, MN, for appellants.

David Y. Trevor, Heather C. Toft, Dorsey & Whitney, LLP, Minneapolis, MN; and James J. Thomson, Jr., Mary Tietjen, Kennedy & Graven, Chartered, Minneapolis, MN, for petitioner and respondent.

Considered and decided by MINGE, Presiding Judge; RANDALL, Judge; and COLLINS, Judge.*

## OPINION

MINGE, Judge.

In this consolidated appeal, appellants challenge the district court's grant of summary judgment on their breach-of-contract and damages claims arising out of a con-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

demnation petition. Because respondent did not breach the lease by initiating condemnation proceedings and because the lease prohibits appellants from recovering a takings award, we affirm.

## FACTS

Appellants Ronald and Judith Rasmussen have operated a Tires Plus store under a series of leases at the same location in St. Anthony since the early 1980s. In July 1996, the Rasmussens entered into their current lease for this business property with Ste. Marie Company (Ste.Marie) as their landlord. The lease has a term of 15 years, with two options to extend the lease for additional terms of five years each. In 1997, respondent the Housing and Redevelopment Authority (HRA) for the City of St. Anthony, Minnesota, purchased land from Ste. Marie in order to establish a municipal liquor store. Because the Rasmussens' business was located next door to the proposed liquor store and Ste. Marie was willing to sell the entire larger parcel to HRA, HRA purchased the parcel containing the Rasmussens' store as well. Because the Rasmussens had a right of first refusal, they were notified of the sale and given an opportunity to buy their store location before HRA completed its purchase.

Six years later, the site of the Apache Plaza shopping center was the subject of a redevelopment project. Incident to that project, HRA agreed to acquire certain parcels of land, including the site of the Rasmussens' tire business, to use eminent domain if needed to accomplish this, and to transfer the parcels to Apache Redevelopment, LLC. Upon learning of HRA's commitment to acquire their leasehold and to condemn it, if necessary, the Rasmussens brought a claim for breach of contract against HRA in May 2004. The Rasmussens alleged that, by telling them that they needed to vacate their premises and threatening to condemn the premises, HRA breached the quiet enjoyment provision of the lease. That provision reads as follows:

Landlord hereby warrants that it and no other person or corporation has the right to lease the Premises. So long as Tenant shall perform each and every covenant to be performed by Tenant hereunder, Tenant shall have peaceful and quiet use and possession of the Premises without hindrance on the part of Landlord, and Landlord shall warrant and defend Tenant in such peaceful and quiet use and possession.

HRA subsequently brought a petition seeking to condemn the Rasmussens' leasehold. HRA argued that due to various terms of the lease dealing with condemnation, the Rasmussens had no compensable interest in the property. The lease defines condemnation as "(a) the exercise of any governmental power, whether by legal proceedings or otherwise, by a Condemnor, or (b) a voluntary sale or transfer by Landlord to any Condemnor, either under threat of condemnation or while legal proceedings for condemnation are pending." The lease describes the consequences of a total taking: "If all of the Premises shall be taken in Condemnation, except for a taking for temporary use, this Lease shall be terminated automatically as of the Date of Taking." The lease also provides for termination by either party in the event of substantial partial taking. Furthermore, the lease states that "[t]he Award for any taking shall be the sole property of Landlord." The lease defines "award" as "all compensation, sums, or anything of value awarded, paid or received on a total or partial condemnation." (However, the lease recognized the Rasmussens' right to retain payment for moving expenses, loss of stock, personal property and trade fixtures, and unamortized costs of improvements paid for by the tenant.)

In August 2004, the district court granted HRA's petition for condemnation. The parties brought cross-motions for summary judgment on the breach-of-contract action and cross-motions for partial summary judgment on the condemnation action. The district court granted HRA's motions to dismiss the breach-of-contract action and grant the condemnation. The district court reasoned that if the condemnation was a "total taking," the lease terminated by its terms. The district court further reasoned that even if it was not a total taking, it was still "a taking through condemnation proceedings" and that the Rasmussens waived their right to compensation except what they had been paid for moving expenses, personal property, and trade fixtures.

The parties stipulated that the district court's order for summary judgment resolved all of the issues in the matter and final judgment was entered. The Rasmussens appeal.

### ISSUES

1. Did HRA breach the quiet enjoyment provision of the lease in acquiring the Rasmussens' interest as lessees by condemnation?
2. Do the lease provisions limiting the lessees' right to condemnation damages apply to this condemnation by HRA?

### ANALYSIS

When reviewing summary judgment, an appellate court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Summary judgment is proper when the evidence in the record shows there is no genuine issue of material fact and either party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03; *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997). "On appeal, the reviewing court must view the evi-

dence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

■ The first issue is whether HRA breached the quiet enjoyment provision of its lease with the Rasmussens by bringing a condemnation petition. Minnesota courts have discussed the covenant of quiet enjoyment, describing a breach of the covenant as "[w]hen an outstanding superior title is asserted in hostility to the title of the covenantee." *Efta v. Swanson,* 115 Minn. 373, 376, 132 N.W. 335, 336 (1911); *see also Miles v. City of Oakdale,* 323 N.W.2d 51, 57 (Minn.1982) (noting that the covenant of quiet possession applies to adverse claims, not to "mere trespasses or actions of wrongdoing third parties"). Although the issue before us is a matter of first impression in Minnesota and we will consider how other jurisdictions have approached the issue, we first consider how Minnesota views the prerogatives of a condemning authority that is also a party to a lease.

#### A. *Lundell*

The Minnesota Supreme Court recently considered the position of a utility with condemning authority who was also a lessee in *Lundell v. Coop. Power Ass'n* and it upheld the district court's grant of the utility's condemnation petition against its own lessor. 707 N.W.2d 376, 381–83 (Minn.2006). In that case, the utility leased property for a telecommunications tower. *Id.* at 379. Subsequently, the lessor suspected that the utility was subleasing the property and using more space and buildings than the lease permitted. *Id.* After the parties disputed various terms of the lease and negotiated for three months, the owner threatened cancellation. The

utility then initiated, and the district court upheld, condemnation proceedings. *Id.* at 380.

The property owners appealed, arguing that there was no public purpose or necessity for the taking and that the utility had acted in bad faith in failing to complete negotiations for amendments to the lease. *Id.* at 378. The supreme court affirmed, reasoning that a condemning authority that has an interest in a property under a lease need only show that the taking was necessary, not that the taking of an interest greater than its current interest under the lease was necessary. *Id.* at 382. The court noted that, "as we have held, a condemning authority cannot bargain away its power of eminent domain." *Id.* at 381 (citing *Village of St. Louis Park v. Minneapolis, Northfield & S. Ry. Co.*, 156 Minn. 164, 169, 194 N.W. 327, 329 (1923)).

The supreme court also concluded that the utility did not act in bad faith: "The mere fact that [the utility] chose to exercise its power of eminent domain rather than continue negotiations with the landowner does not make this taking an abuse of [the utility]'s condemnation power." *Id.* at 383. The court further stated that any additional leverage that this power gives to a condemning authority that is also a party to a lease "is leverage that the law intends such an authority to have." *Id.* Although *Lundell* did not consider a quiet enjoyment provision in a lease, we find it instructive on the issue of a condemning authority's powers when the authority is also a party to a lease, as HRA is here.

### B. *Other States*

The parties cite cases from other jurisdictions on the issue of whether an entity with eminent domain authority breaches a quiet enjoyment provision in a contract by initiating a condemnation proceeding against its own tenant. In *City of Glendale v. Superior Ct.*, the city-lessor agreed to a 20–year lease and reserved the right to terminate the lease after 10 years, but then prior to the expiration of the 10–year period, filed a complaint to condemn the property. 18 Cal.App.4th 1768, 1773–74, 23 Cal.Rptr.2d 305, 308–09 (1993). The court held that the city did not breach its lease by using its powers of eminent domain, noting that "the City, as a governmental entity, could not in any event abridge by contract its sovereign authority to take property by eminent domain." *Id.* at 1778, 23 Cal.Rptr.2d at 312.

Similarly, in *Goodyear Shoe Machinery Co. v. Boston Terminal Co.*, the court held that a covenant of quiet enjoyment was not breached when a landlord exercised its power of eminent domain over its tenant: "But the sovereign power to take by eminent domain is not an incumbrance, and the exercise of the power is not a breach of any of the ordinary covenants." 176 Mass. 115, 57 N.E. 214, 215 (1900). The court further noted that "it cannot matter that the person who sets the delegated sovereign power in motion is the landlord. The exercise of that power has not been covenanted against." *Id.*

■ The Rasmussens attempt to distinguish *Glendale* on the basis that the tenant in that case was still entitled to just compensation for the taking, even though its breach-of-contract claim was dismissed. *See* 18 Cal.App.4th at 1780–81, 23 Cal. Rptr.2d at 313. But this factor was not dispositive in *Glendale*, and we conclude that whether the Rasmussens are entitled to just compensation for the taking is irrelevant to the question of whether HRA breached the contract. *See id.* The Rasmussens further argue that *Glendale* was different because it involved "a public building," but this distinction is not supported because the district court here also found that HRA's taking served a public purpose.

The Rasmussens attempt to distinguish *Goodyear Shoe* on the basis that it involved an implied covenant, rather than an express provision in a lease. *See* 57 N.E. at 215. But this distinction is not compelling because the implied covenant of quiet enjoyment is fundamental to the lessor's obligation to the tenant and a sovereign's ability to impair its eminent domain powers by contract should not be any different for an implied covenant than for an express contract.

In support of their position, the Rasmussens cite *Farmers' Elec. Coop., Inc. v. Missouri Dep't of Corr.*, 977 S.W.2d 266 (Mo.1998). In that case, the cooperative alleged that the department breached its contract with the cooperative by requesting the annexation of land that would make the cooperative's performance under the contract illegal. *Id.* at 269. The supreme court reversed the district court's grant of summary judgment for the department, rejecting the department's defense that the annexation was a valid exercise of its police power to which the cooperative's contractual rights were subject. *Id.* at 272. The court stated that "[t]he act of requesting and agreeing to annexation did not involve an exercise of police power by the department" because any party could request annexation and the annexation was voluntary. *Id.* Because HRA in the case before us is using its eminent domain authority, *Farmers' Elec.* is inapplicable.

The reasoning of *Glendale* and *Goodyear Shoe* is consistent with the tenor of the approach taken by the Minnesota Supreme Court in *Lundell.* We conclude that HRA retained and did not waive the right to its power of eminent domain and that the use of that power did not breach the quiet enjoyment provision of the lease with the Rasmussens.[1] In reaching this conclusion, we note that there is no allegation or evidence that HRA structured its purchase and condemnation activities to limit the Rasmussens' rights (or recovery) as a lessee.

### C. Sovereign Acts Doctrine

■ The Rasmussens argue that HRA's breach of the contract was not the protected act of a sovereign under the principles of the "sovereign acts doctrine," an affirmative defense to a breach-of-contract claim. *See Allegre Villa v. United States*, 60 Fed.Cl. 11, 16 (Fed.Cl.2004). It is not clear that the sovereign acts doctrine has been adopted in Minnesota. Even if the doctrine is viable in Minnesota, we need not reach it here because we have concluded that HRA did not breach the covenant of quiet enjoyment and does not need an affirmative defense.

### II.

■ The second issue is whether the terms of the lease limit the Rasmussens' recovery following a condemnation. As the Minnesota Supreme Court recognized in *Housing and Redevelopment Auth. of City of St. Paul v. Lambrecht,* a lease may contain a provision limiting the rights of a tenant upon condemnation of the property. 663 N.W.2d 541, 546 (Minn.2003). Here, the lease contained two types of such provisions, one terminating the lease upon a "total taking" or a "partial taking" and the other assigning the award for any taking to the landlord.

The Rasmussens first argue that the provision terminating the lease or provid-

---

1. Because we conclude that HRA did not breach its contract, we need not reach the Rasmussens' argument that HRA cannot enforce provisions of the contract prohibiting the Rasmussens from recovering a takings award if HRA breached other provisions of the contract. We also do not reach the issue of whether HRA's actions served a public purpose because the Rasmussens do not challenge that finding on appeal.

ing an option to terminate the lease does not apply because this was not a total or partial taking, as only their leasehold interest was taken, not the rest of the fee interest already held by HRA. In *Bradley Facilities, Inc. v. Burns*, the court interpreted similar language, "the entire Demised Premises, or so much thereof that the remainder is not useful to Tenant," as it applied to the condemnation of a leasehold by the lessor who itself held the fee interest. 209 Conn. 480, 551 A.2d 746, 749 (1988). The court noted that by "entire," the lease was only referring to "the physical parcel of land being leased and not to the diverse interests that may exist in that land" because the phrase "entire Demised Premises" was followed by a clause contrasting it with "so much thereof that the remainder is not useful." *Id.*

Here, the lease contrasts "total" and "partial" takings with each other; "total" is not contrasted with some interest less than the entire fee simple. Because HRA took the Rasmussens' entire leasehold, which in combination with the interest HRA already owned in the property constituted full fee-simple ownership, it was a total taking. As a consequence, the lease terminated upon the taking, and the Rasmussens no longer had any interest in the condemned property. *See Lambrecht*, 663 N.W.2d at 547.

The Rasmussens also argue that the provision in the lease assigning the condemnation award to HRA is not applicable.

However, this argument is based on the claim that the taking is fractional. Based on our foregoing conclusion that this taking is functionally of the entire interest in the parcel, this argument fails.

■ The Rasmussens finally argue that the condemnation provisions of the lease did not contemplate a condemnation petition brought by the lessor itself, citing one of the lease's definitions of condemnation as "a voluntary sale or transfer by Landlord to any Condemnor, either under threat of condemnation or while legal proceedings for condemnation are pending." Although this definition may imply that the lease contemplated application to condemnations not initiated by the landlord, the first definition of condemnation in the lease provides no such limitation: " 'Condemnation' means (a) the exercise of any governmental power, whether by legal proceedings or otherwise, by a Condemnor ... (4) 'Condemnor' means any public or quasi-public authority, or private corporation or individual, having the power of condemnation." As discussed earlier, the *Lundell* decision recognizes that condemning authorities have dual roles when they are lessees and may properly act in either capacity. *See Lundell*, 707 N.W.2d at 382.

The lease prohibits the Rasmussens from recovering a takings award following a condemnation. We note that the Rasmussens have received the same amount of compensation they would have received if Ste. Marie had not sold the property to HRA.[2] There is no allegation or evidence

2. The Rasmussens claim HRA reaps a windfall benefit here because as the present landlord, it is able to keep whatever compensation it would have been obliged to pay Ste. Marie if HRA had initiated condemnation proceedings while Ste. Marie owned the property. To the extent there were any such savings, Ste. Marie would have been able to negotiate for that premium when it sold to HRA. Furthermore, the Rasmussens had a right of first refusal to purchase the property when HRA bought but declined to do so. If the Rasmus-

sens thought the sale by Ste. Marie to HRA was for a bargain price, they could have bought at that earlier date, merging their interest with that of Ste. Marie, and claimed compensation from HRA accordingly.

The Rasmussens further argue that HRA has been opportunistic, playing a chameleon-like role by taking maximum advantage of its position as a condemning authority and then changing hats to take maximum advantage of fortuitous lease provisions that favor the

that HRA orchestrated its purchase and condemnation so as to disadvantage the Rasmussens. The district court did not err in granting summary judgment against the Rasmussens on their claim for damages due to the condemnation.

## DECISION

The district court did not err in determining that the quiet enjoyment provision of the lease does not preclude HRA from acquiring the Rasmussens' interest by condemnation even though HRA was also the lessor. The district court also did not err in determining that the lease provisions limiting damages in condemnation were applicable to HRA's acquisition of the Rasmussens' interest in this proceeding.

**Affirmed.**

landlord. As the Minnesota Supreme Court observed in *Lundell*, the added leverage the condemning authority has is inherent in the power the legislature granted. 707 N.W.2d at 383. In any event, there is no evidence that HRA was malevolent or devious.